793 A.2d 888 (2002)
349 N.J. Super. 506
Elizabeth DUNLEA, Plaintiff-Appellant,
v.
TOWNSHIP OF BELLEVILLE and Joseph Zarello, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 2002.
Decided April 4, 2002.
*889 David B. Rubin, Metuchen, argued the cause for appellant.
Bruce D. Greenberg, Newark, argued the cause for respondents (Lite DePalma Greenberg & Rivas, attorneys; Mr. Greenberg and John M. Podesta, on the brief).
Before Judges PRESSLER [1], WEFING and CIANCIA.
The opinion of the court was delivered by CIANCIA, J.A.D.
Plaintiff Elizabeth Dunlea appeals the dismissal of her automobile negligence action against defendant, Belleville Police Officer Joseph Zarello and his employer, defendant Township of Belleville. The litigation went to trial before a jury, but at the close of all the evidence defendants successfully renewed a motion pursuant to R. 4:37-2(b) for an involuntary dismissal on the theory that N.J.S.A. 59:3-3 provided immunity to Officer Zarello and to the Township, which had been brought into the litigation on a vicarious liability claim. We now reverse that dismissal and reinstate plaintiff's cause of action. In our view plaintiff's proofs, if credited, were sufficient to permit a reasonable jury to conclude that Zarello's conduct was not objectively or subjectively reasonable. A jury question having been presented, defendants' motion for involuntary dismissal should have been denied.
It is, of course, now firmly established that on a motion for involuntary dismissal pursuant to R. 4:37-2(b), or a motion for judgment at the close of all the evidence pursuant to R. 4:40-1, the court must accept as true all evidence that supports the position of the party opposing the motion and must accord that party the benefit of all legitimate inferences that can be deduced therefrom. If reasonable minds could differ, the motion must be denied. Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969); Baliko v. Intern. Union of Oper. Eng'rs, 322 N.J.Super. 261, 272-273, 730 A.2d 895 (App.Div.), certif. denied, 162 N.J. 199, 743 A.2d 851 (1999). Viewing the evidence in the present case pursuant to that standard, the jury could reasonably have found the following.
On July 25, 1996, at about 10:30 p.m., plaintiff was driving south on Washington Avenue, an undivided highway consisting of two lanes of traffic in each direction. Plaintiff was in the left lane going slower than the permitted speed limit. Defendant Zarello was traveling north on Washington Avenue with another officer. They were responding to a report of a burglary in progress at a location near the intersection of Washington Avenue and Van Houten Avenue. Zarello was driving a marked police car equipped with siren, overhead lights, grill lights and "wig-wag" headlights. At Van Houten Avenue defendant attempted to turn left and proceed across the path of oncoming traffic, when he collided with plaintiff's vehicle. Plaintiff's proofs were that the police car siren was not on, the overhead lights were not on, the headlights were on but not flashing, and there were no blinking lights. There was not even a turn signal. Defendant was going "fast" and turned "abruptly," "very sharply" into plaintiff's vehicle.
Defendants argued that Zarello's conduct was immune from liability pursuant to N.J.S.A. 59:3-3, which provides:
A public employee is not liable if he acts in good faith in the execution or enforcement *890 of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.
Defendants erroneously argued that plaintiff had to show willful misconduct in order to defeat defendant's claim that he acted in good faith.
On the facts here presented, it is clear that N.J.S.A. 59:3-3 is the relevant immunity. Canico v. Hurtado, 144 N.J. 361, 676 A.2d 1083 (1996). In order to succeed under that immunity, a public employee must show that the challenged conduct was undertaken with objective or subjective good faith. Bombace v. City of Newark, 125 N.J. 361, 374, 593 A.2d 335 (1991).
It is clear under our case law that mere negligence on the part of a public employee is generally not sufficient to defeat the good-faith immunity provided by N.J.S.A. 59:3-3. We disagree, however, with the position espoused by defendants' trial counsel that a plaintiff must demonstrate willful misconduct in order to avoid the statutory immunity. Counsel relied on Marley v. Palmyra Borough, 193 N.J.Super. 271, 473 A.2d 554 (Law Div.1983), but that case does not stand for the proposition that only willful misconduct will defeat a claim of good-faith immunity. The misconception is apparently also fostered by a misinterpretation of N.J.S.A. 59:3-14a, which states:
Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.
That statute should not be read as supporting immunity absent a demonstration that the public employee's conduct was criminal, constituted actual fraud, actual malice, or willful misconduct.
In Marley, Judge Haines analyzed the relationship between N.J.S.A. 59:3-3 and N.J.S.A. 59:3-14. After noticing various definitions in case law and the dictionary for "good faith," "willful," and "misconduct," he stated:
These definitions are illustrative. They show that "good faith" and "willful misconduct" need not be true opposites as used in the Tort Claims Act. I find they are not. Had the intention been otherwise, the use of the words "good faith" and "bad faith," obvious opposites, would have been expected. Lustrelon v. Prutscher, 178 N.J.Super. 128, 144, 428 A.2d 518 (App.Div.1981). Furthermore, if the terms "good faith" and "willful misconduct" are interpreted as truly opposite, one term becomes redundant. Such statutory construction is to be avoided. Mentus v. Irvington, 79 N.J.Super. 465, 191 A.2d 806 (Law Div.1963). A coupling of the Smith[2] and Sianom[3] language produces an acceptable definition. "Good faith" is honesty of purpose and integrity of conduct without knowledge, either actual or sufficient to demand inquiry, that the conduct is wrong. Required (imputed) knowledge of law is not a part of the definition. Reckless action may deny good faith. "Willful misconduct" is the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden. It is more than an absence of "good faith."
"Willful misconduct" does not refer to negligence; it is much more. "Good faith" may exist in the presence of negligence. That this is true seems apparent *891 from our Legislature's use of the words "good faith" instead of "due care," as found in the Federal Tort Claims Act, supra. The absence of due care is negligence; the absence of good faith may not relate to negligence. The New Jersey act therefore provides immunity to public employees engaged in law enforcement notwithstanding their negligence, so long as they act in "good faith."
[Marley, supra, 193 N.J.Super. at 294-295, 473 A.2d 554.]
This analysis was apparently accepted by our Supreme Court in Canico v. Hurtado, supra, 144 N.J. 361, 676 A.2d 1083, where it made clear that N.J.S.A. 59:3-3 is the applicable immunity when a police officer driving to a crime scene collides with another motorist. Justice Pollock, writing for the Court, stated in part:
Although we recognize that people ordinarily do not use the term "good faith" to describe the operation of motor vehicles, we believe that the Legislature intended that the term could encompass the operation of police vehicles. A public employee, although negligent, may still act in good faith. Marley v. Palmyra Bor., 193 N.J.Super. 271, 295, 473 A.2d 554 (Law Div.1983). To pierce section 3-3's qualified immunity, a plaintiff must prove more than ordinary negligence. See id. at 294, 473 A.2d 554 (stating that recklessness usually denies good faith).
[Id. at 365, 676 A.2d 1083.]
We do not read the Court's recent opinion in Alston v. City of Camden, 168 N.J. 170, 773 A.2d 693 (2001), as in any way altering the analysis under N.J.S.A. 59:3-3. There the Court's references to willful misconduct were directed to other portions of the Tort Claims Act, primarily the pursuit immunity set forth in N.J.S.A. 59:5-2. The phrase willful misconduct was not applied when the Court went on to discuss good-faith immunity pursuant to N.J.S.A. 59:3-3. The Court's focus there was on affirmative showings of objective and subjective good faith. Only the following language touched on the relationship between good faith and willful misconduct:
Although "`good faith' pursuant to N.J.S.A. 59:3-3, and the Legislature's refusal to grant the officer immunity in those cases in which the officer acts with `willful misconduct,' see N.J.S.A. 59:3-14a, are not necessarily two sides of the same coin," the distinction between the two "is a narrow one." Fielder, supra, 141 N.J. at 137, 661 A.2d 231 (Stein, J. concurring). Defendant's actions may have been negligent, but "negligence does not necessarily prevent a finding of `good faith.'" Id. at 138, 661 A.2d 231.
[Alston, supra, 168 N.J. at 187, 773 A.2d 693.]
Fielder v. Stonack, 141 N.J. 101, 661 A.2d 231 (1995), referred to in Alston, supra, was primarily concerned with an evaluation of N.J.S.A. 59:5-2b and in that context willful misconduct was discussed. Chief Justice Wilentz there defined willful misconduct by quoting from Marley, supra:
"`Willful misconduct' is the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden. It is more than an absence of `good faith.' `Willful misconduct' does not refer to negligence; it is much more." Marley v. Borough of Palmyra, 193 N.J.Super. 271, 294-95, 473 A.2d 554 (Law Div.1983).
[Fielder, supra, 141 N.J. at 124, 661 A.2d 231 (emphasis added).]
The Chief Justice again defined willful misconduct later in the opinion and, again, noted in relation to good-faith immunity *892 that proof of lack of good faith does not necessarily equate with willful misconduct:
The phrase "willful misconduct" in this context naturally commands the meaning we here attribute to it: the knowing failure to follow specific orders, "knowing" that there is an order and willfully failing to follow it, i.e., intentionally failing to obey the order. More particularly, willful misconduct in a police vehicular chase has two elements: (1) disobeying either a specific lawful command of a superior or a specific lawful standing order and (2) knowing of the command or standing order, knowing that it is being violated and, intending to violate it. Where the command or order is not only specific but clearly has no exceptionsexpressed or impliedwillful misconduct is not affected by the good faith of the public employee who believes he or she somehow had a right to knowingly and willfully disobey.
By virtue of the Act, the defense of good faith in the enforcement or execution of the law is unavailable when the public employee is guilty of willful misconduct. Proof of lack of good faith, however, does not equate with willful misconduct, because the situation may not even involve specific commands or standing orders. Lack of good faith may be factually relevant, however, to disputes over public employees' claims that they did not know of the order, or that they did not know they were violating it, in other words, relevant to the state of mind that is part of the definition of willful misconduct.
[Id. at 126-127, 661 A.2d 231 (emphasis added).]
Thus, in order to defeat a claim of good-faith immunity, at least on facts such as these now before us, it is sufficient that plaintiff shows defendant acted recklessly. Reckless conduct has recently been defined by our Supreme Court in the context of conduct occurring during athletic events, but the definition obviously transcends the factual setting:
The question presented here is whether plaintiff's case can survive a summary judgment motion under a recklessness standard. Prosser & Keeton have stated that an actor acts recklessly when he or she intentionally commits an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences. Prosser & Keeton on the Law of Torts, § 34 at 212 (5th Ed.1984). The standard is objective and may be proven by showing that a defendant "proceeded in disregard of a high and excessive degree of danger either known to him [or her] or apparent to a reasonable person in his [or her] position." Id. at 214. Reckless conduct is an extreme departure from ordinary care, in a situation in which a high degree of danger is apparent. Ibid. Reckless behavior must be more than any "mere mistake resulting from inexperience, excitement or confusion, and more than mere thoughtlessness or inadvertence, or simple inattention...." Ibid.

The Restatement (Second) of Torts articulates the standard as follows, contrasting negligence and recklessness:
The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially *893 greater than that which is necessary to make his conduct negligent.
[Restatement (Second) of Torts § 500 at 587 (1965).]
Recklessness, unlike negligence, requires a conscious choice of a course of action, with knowledge or a reason to know that it will create serious danger to others. Negligence may consist of an intentional act done with knowledge that it creates a risk of danger to others, but recklessness requires a substantially higher risk. The quantum of the risk is the important factor. Ibid.

[Schick v. Ferolito, 167 N.J. 7, 19-20, 767 A.2d 962 (2001).]
Similar definitions are found in our motor vehicle statute, N.J.S.A. 39:4-96,[4] and criminal code, N.J.S.A. 2C:2-2b(3).[5] Although worded somewhat differently, the definitions encompass the same basic concepts. See State v. Muniz, 118 N.J. 319, 324-325, 571 A.2d 948 (1990) (proofs to establish death by auto, N.J.S.A. 2C:11-5a and reckless driving are essentially the same, except that in the former it must also be shown that the reckless driving caused death of another).
In the present case the jury could have found that defendant Zarello, while accompanied by another officer who could have assisted him, failed to activate any warning lights or even a turn signal when "abruptly" turning into oncoming traffic at a "fast" rate of speed. That fact scenario was sharply disputed by defendant, but his denial only served to present a credibility question for the jury. As to the absence of an audible siren, defendant admitted turning it off prior to the accident in order to avoid warning the perpetrators of the approaching police vehicle. Of course, such conduct also serves to avoid warning innocent motorists of the approaching police vehicle. Again we believe that this element of the case presents a jury question. Canico, supra, is easily distinguishable. There the Court held the police officer's conduct was in good faith as a matter of law, but, unlike the facts of the instant case, the police officer had "proceeded at a reduced rate of speed and tried, by using his siren and overhead light bar, to warn other motorists." Canico, supra, 144 N.J. at 366, 676 A.2d 1083.
Accordingly, we hold the motion for involuntary dismissal was improperly granted.[6] The order dismissing plaintiff's complaint is reversed. Plaintiff's complaint is reinstated and she may proceed to trial.
NOTES
[1] Judge Pressler did not participate in oral argument. However, the parties consented to her participation in the decision.
[2] Smith v. Whitman, 39 N.J. 397, 189 A.2d 15 (1963).
[3] Siano v. Helvering, 13 F.Supp. 776 (D.N.J.1936).
[4] A person who drives a vehicle on a highway heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of reckless driving....

[N.J.S.A. 39:4-96.]
[5] A person acts recklessly ... when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

[N.J.S.A. 2C:2-2b(3).]
[6] For the first time on appeal, defendants assert a claim for pursuit immunity under N.J.S.A. 59:5-2b(2), apparently by virtue of some evidence that at the time of the accident two juveniles were observed running from the area of the reported burglary. This theory of immunity was not raised below, and we decline to address it now. Deerfield Estates, Inc. v. Tp. of East Brunswick, 60 N.J. 115, 120, 286 A.2d 498 (1972).